# David Abrams, Attorney at Law
305 Broadway Suite 601, New York, NY 10007
P.O. Box 3353, Church Street Station, New York, NY 10008
Tel. 212-897-5821 Fax 212-897-5811

December 23, 2020

To:     Hon. Analisa Torres                             (by ECF)
        United States District Court

Re:     <u>Paleja v. KP NY Operations LLC, Case No. 20cv475 (AT)</u>

Dear Judge Torres:

      I represent the Plaintiff in the above-referenced action. Pursuant to Your Honor's individual practices, I am writing in response to Defendant's letter of December 17, 2020 requesting a premotion conference. As set forth in more detail below, Defendant's proposed application is substantively baseless; untimely; utterly non-compliant with Your Honor's individual practices; and completely at odds with the legal and factual submissions the Defendant made earlier in this matter.

      Among other things, the FLSA threshold for the business ownership exemption is 20%. Since my client owns only 10% of the Defendant (and even that was only in his last 8 months of employment), the FLSA exemption for business owners does not apply either before or after he invested in the business.

      **I.**     **Background**

      By way of background, this is a wage/hour case in which my client alleges that he was employed as a cook for the Defendants for approximately 6 years until his job ended in or about October of 2019. My client alleges, among other things, that he regularly worked in excess of 40 hours per week but was not paid overtime premiums.

      In a separate proceeding in New York State Supreme Court, my client alleges that in February of 2019, he purchased or attempted to purchase a 10% share in the Defendant restaurant; that he paid some $60,000 for this share; and that subsequently the Defendant froze him out of the business; denied him his ownership interest; and in effect stole his $60,000. There is no allegation that my client's previous work for the business had contributed to any sort of "sweat equity." He was simply a wage-earning worker who, after 5 years, attempted to purchase a share in the business, got snookered, and is now seeking legal redress.

      It should be noted that for the last 6 months, the Defendant has vehemently denied that my client has any ownership interest in its restaurant. For example, in April of 2020 I sent an email to Defendant's counsel at the time requesting inspection of the Defendant's books and records and received the following response:

> As Mr. Paleja is not a Shareholder, thus he has no right to inspect the Restaurant or any of the Company's documents.Therefore, <u>we are not permitting the inspection</u>.

Similarly, on May 21, 2020, another of Defendant's counsel wrote a letter to this Court claiming that my client (and his former supervisor) was "an employee of the Defendant[] with absolutely no ownership in the Company or deciding authority." (Docket No. 25). Similarly, on Page 4 of Docket Number 30-1, the Defendant listed what it claimed to be its owners; my client's name is not among them. Since then, Defendant has not withdrawn or corrected this statement.

Indeed, in April of 2020, the Defendant filed an affidavit in this Court stating that my client was simply an hourly employee who worked set hours and was paid wages for his work. (Docket 14-2). Although my client obviously disagrees with the details of the Affidavit, significantly there is no mention or claim whatsoever that my client was a partner, co-owner, or anything like this.

The Defendant in this matter has also aggressively resisted providing discovery as to the identities of its owners and managers. For example, Mr. Paleja sought to depose the Defendant's claimed principal Anika Malhotra, among other things, to learn more about the ownership and management of the Defendant. Defendant refused to produce Ms. Malhotra claiming that this information is "irrelevant in this case." (Docket Number 46, p. 2). Indeed, Defendant refused to produce Ms. Malhotra for deposition even after being ordered to do so by Judge Fox. Defendant also refused to respond to interrogatories asking for the names of the owners and managers of the business even after being ordered to do so by Judge Fox. Rather, Defendant filed voluminous objections arguing that "the identity of each owner, shareholder, and/or member of the corporate Defendant -- is not relevant" (Docket #49).

Now, six months later and after the close of discovery, Defendant has done a dramatic about-face, apparently deciding that it would be tactically more advantageous to claim that my client is an owner and not an hourly wage-earning employee as it had insisted a few months earlier. Defendant has not even bothered to withdraw its earlier motion which insisted that my client was a simple hourly employee or to offer any kind of fig leaf for its 180 degree shift in position. Rather, Defendant essentially pretends that its earlier motion (which consumed countless hours in attorney time) never happened.

As set forth in more detail below, Defendant's Plan B is totally lacking in merit.

## II. The Defendant's Motion is Substantively Baseless

### A. The Defendant's Argument Applies Only to a Few Months of Employment

As an initial matter, my client alleges (and nobody disputes) that before February of 2019 he had no ownership interest whatsoever in the Defendant restaurant. Therefore, even if the Defendant completely succeeded in its defense, the best it could hope for would be to knock a few months off the back end of a 6-year overtime claim. Defendant attempts to get around this problem by seizing on the following allegation made by my client in his State Supreme Court action:

From the beginning, Mr. Paleja had expressed interest in purchasing a share of the Restaurant. (Docket 76-1 Paragraph 33).

According to the Defendant, merely expressing an interest in purchasing a business immediately makes an employee an owner who is exempt from overtime. Needless to say, there is no legal support for such a patently ridiculous proposition.

### B. Plaintiff's Ownership Interest is Below the 20% FLSA Threshold

For workers such as my client, the FLSA regulations have a bright line rule:

> The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act also includes any employee **who owns at least a bona fide 20-percent equity interest** in the enterprise in which the employee is employed, regardless of whether the business is a corporate or other type of organization, and who is actively engaged in its management.

29 C.F.R. 541.101 (emphasis added).

Here, of course, even ignoring the question of whether my client was ever anything more than a cook, my client alleges that even after February of 2019 he owned only 10% of the Defendant's business - well under the 20% threshold.

### C. Defendant Denies Plaintiff's Ownership Interest

As noted above, both inside this action and outside of it, the Defendant has denied that my client has any ownership interest at all. Inasmuch as it denies that my client is an owner, Defendant has no standing to claim that he is an exempt owner. *See, e.g.*, *Kim v. The Korean News of Chicago, Inc.*, No 17 c 1300 (N.D. Ill. July 19, 2017) (denying ownership exemption where Plaintiff's claim of 30% interest was in dispute).

### III. The Defendant's Motion is Procedurally Barred

The time for filing a 12(b)(6) motion expired months ago; the time for seeking summary judgment expired on November 30, 2020 pursuant to Paragraph 8 of the Court's Case Management Order of May 20, 2020 (Docket Number 23).

Moreover, the Defendant has utterly failed to comply with Your Honor's individual practices for motions to dismiss or motions for summary judgment. For example, Defendant never emailed me a statement of material facts or an affidavit as required by Your Honor's individual practice rule III(C)(ii). It will surely be fascinating to see if the Defendant is willing to admit in the form of an affidavit that my client was an owner of the business, something that it has denied for quite some time now.

Further, Defendant has failed to show good cause for extension of any deadlines. When it filed its first motion to dismiss, Defendant was well aware that my client was claiming an ownership interest and in fact explicitly denied that interest its reply papers on June 17, 2020 -- weeks *after* the State Court action. (Docket 30-1, p. 4) In fact, Defendant's current counsel filed a Memorandum of Law on October 5, 2020 referencing the ownership dispute and denying that it was relevant to this matter. (Docket No. 49 p. 2). Although Defendant's counsel makes much of the alleged fact that he tested positive for the Coronavirus back in August, his filings in other matters indicate that he was never hospitalized but rather stayed home from August 14 to August 30, 2020 and worked from home at least to some extent. This was 3 months before the deadline for submitting summary judgment motions in this matter.

Moreover, a cursory review of the docket in this matter demonstrates that after his Coronavirus travails ended on August 30, 2020, Defendant's counsel had plenty of time and energy to litigate this matter. Indeed, just a few later, on September 4, 2020, Defendant's counsel filed a 5 page single spaced letter application with 7 exhibits, demanding that I be sanctioned for failing to provide him with a document in his preferred format. (*See* Docket Number 42) (The motion was later denied as "meritless and frivolous," *see* Docket Number 45) On October 6, 2020, rather than follow Judge Fox's instructions and respond to a simple interrogatory which, ironically enough, directed the Defendant to identify its owners and managers, Defendant's counsel filed objections complete with a 9-page memorandum of law. (*See* Docket Number 49).

In short, in light of the intense but non-essential docket activity in this matter, any claim by Defendant's counsel that circumstances prevented him from submitting a timely application for summary judgment rings hollow. Indeed, there was nothing stopping Defendant's counsel from simply seeking an extension more than 5 days before the deadline for summary judgment as provided in the Court's initial scheduling order. (Docket No. 23 p. 4)

For these reasons, Defendant's application should denied. However as noted above, if the Court is of the mind to entertain Defendant's application, it should be required to comply with Your Honor's individual practices. I think it is pretty likely that for obvious reasons, Defendant will not dare to submit an affidavit admitting that my client became a 10% owner of its restaurant in early 2019.

Respectfully yours,

/s/ David Abrams

David Abrams

cc:     Defendant's Counsel                        (by ECF)